# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| COLLEEN CONN </br>    Plaintiff, </br> </br>    v. </br> </br> UNITED STATES STEEL CORPORATION </br> and IRONWORKERS LOCAL 395, </br>    Defendants. | ) </br> ) </br> ) </br> )   CAUSE NO.: 2:07-CV-00213-JVB-PRC </br> ) </br> ) </br> ) </br> ) |

## OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion to Disqualify Counsel [DE 38], filed by Plaintiff Colleen Conn on September 26, 2008. For the following reasons, the Court denies the Motion to Disqualify Counsel.

## FACTUAL AND PROCEDURAL BACKGROUND

On or about October 27, 2005, Pirson Contractors ("Pirson") and/or United States Steel Corporation ("U.S. Steel") terminated Plaintiff Colleen Conn from her employment at the #14 Blast Furnace ("Blast Furnace") located at U.S. Steel. Subsequently, Ironworkers Local 395 ("Union") Business Manager James Stemmler met with Keith Kolb (Manager of Employee Relations for U.S. Steel) and Ms. Conn. Attorney Paul T. Berkowitz, the Attorney for the Union, was not present.

On November 1, 2005, Attorney Berkowitz, identifying himself as the Attorney for the Union, sent a letter to Pirson requesting all written and other information in Pirson's possession with respect to Ms. Conn's discharge so that the Union could fulfill its statutory role as Ms. Conn's bargaining unit representative. On November 16, 2005, the Union filed a charge against Pirson with the National Labor Relations Board ("NLRB"), signed by Attorney Berkowitz as Union Representative, for not responding to the November 1, 2005 letter. Then, on December 1, 2005, Mr. Stemmler wrote Pirson a letter stating that he had directed the Union attorney to file a NLRB charge

only after Pirson failed to respond to the Union's prior request for information. In the same letter, Mr. Stemmler requested to move to Step 2 of the grievance procedure as provided for in the collective bargaining agreement between Pirson and the Union.

Pirson responded by fax on December 5, 2005, stating that Ms. Conn's discharge was initiated by U.S. Steel, not Pirson, and that the Union should contact Keith Kolb at U.S. Steel. On December 13, 2005, Attorney Berkowitz responded to Pirson, stating that the information Pirson had supplied up to that point was unresponsive and unacceptable. On January 13, 2006, the Project Manager at Pirson sent a facsimile communication to the NLRB, copying the Union, Mr. Stemmler, and Mr. Kolb, among others, indicating that he had learned informally that Ms. Conn was barred from the U.S. Steel plant by U.S. Steel as a result of certain arguments with U.S. Steel officials at the gate.

On January 25, 2006, the NLRB sent a facsimile communication to Attorney Berkowitz, requesting that he withdraw the NLRB charge against Pirson and advising that, if the withdrawal was not received by the close of business on January 26, 2006, it would be recommended that the NLRB charge be dismissed. Attorney Berkowitz, on behalf of the Union, orally withdraw the charge. On January 30, 2006, Attorney Berkowitz notified Mr. Stemmler by telephone and by facsimile communicationof the NLRB's decision and that he had withdrawn the charge against Pirson because Pirson had provided the Union with the requested information. In the communication, he gave Mr. Stemmler the telephone number for the EEOC's regional office in Indianapolis and explained to him that Ms. Conn would begin the process of filing a charge of sex discrimination against Pirson and U.S. Steel by calling that office.

On February 22, 2006, Ms. Conn sent a facsimile communication to the EEOC stating, "I am going to schedule a meeting with Paul Berkowitz (Union hall lawyer) to hear his input, so I might have some information to fax you. Colleen." Def. Br., Exh. 3 (parenthetical in original).

On February 26, 2006, Attorney Berkowitz, the attorney for the Union, met Ms. Conn at the Country Lounge Inn. During the meeting, Attorney Berkowitz requested that Ms. Conn explain to him what occurred on the job just prior to her termination from the Blast Furnace, and Ms. Conn informed Attorney Berkowitz of what she knew of her termination.[1] During this meeting, Attorney Berkowitz asked Ms. Conn questions about her version of her employment situation at the Blast Furnace and also informed her of the time frame to bring an action, which he stated he believed was 320 days. He asked her whether anyone on the job ever made a comment to her about not liking females on the job, but she never answered the question. Additionally, Attorney Berkowitz advised Ms. Conn that she could not bring a claim against Keith Kolb as an individual–that she could only file against U.S. Steel for her termination, and he referenced the collective bargaining agreement as controlling the steps he took. He also told her that Pirson is out of business and that "Pirson is out of the picture." Pl. Br., Exh. A, p. 62. Berkowitz further stated it was the Union's "position that [Ms. Conn was] a victim of sex discrimination." Pl. Br., Exh. A, p. 35-36, 62-63.

On August 14, 2006, Attorney Berkowitz wrote a Statement of Position to the EEOC on behalf of the Union related to Ms. Conn's EEOC charge brought against the Union. Therein, he wrote that, after filing a grievance with the NLRB against Pirson on behalf of Ms. Conn, "the Union continued to press the matter on Ms. Conn's behalf. In fact, this office was specifically hired and

---

[1] A transcript of the February 20, 2006 conversation at the Country Lounge Inn is available because Ms. Conn recorded the conversation with a tape recorder in her purse, unbeknownst to Attorney Berkowitz, and later had the tapes transcribed.

paid by the Union to serve as Ms. Conn's attorney in the pursuit of an EEOC case against U.S. Steel and Pirson. We were retained in February and the undersigned met with Ms. Conn and Union Business Manager Jim Stemmler on February 21, 2006." He explained that, although he thought she would contact him to pursue a claim of sex discrimination against U.S. Steel, instead, she filed an EEOC charge against the Union.

On May 9, 2007, Ms. Conn sent a letter to the EEOC in which she wrote, among other things, "Well had I had the opportunity to show you that Paul Berkowitz ([Union] lawyer) has very much mislead the EEOC and twisted up the facts as to make it appear to the EEOC that he did his part in representing Colleen Conn the right way." Def. Br., Exh. 4, p. 3. She further wrote,

> But then I receive a phone call from Jim Stemmler (I.W. Local 395 Business Manager) telling me that they have done all they can and now I need to get ahold of [sic]EEOC to file charges against Pirson and U.S. Steel. I told Stemmler how can they be done when nothing has been settled and no legal inquiries have been made by our hall's lawyer.

*Id*. at p. 5. She then wrote, "I told Jim I had talked to lawyers about this matter and that a few of them suggested that I might have a suit against the union hall for not representing me properly . . . ." *Id*. at p. 6. Finally, she wrote, "[Paul Berkowitz and I] only had 1 meeting ever. And that was long after the labor board meeting, and long after I had started this process with the EEOC." *Id*.

On June 27, 2007, Ms. Conn filed a pro se Complaint in the United States District Court for the Northern District of Indiana, alleging violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, against Defendants U.S. Steel and the Union. On October 5, 2007, three attorneys filed applications to appear pro hac vice on behalf of Ms. Conn, which were granted on October 10, 2007. On October 11, 2007, Ms. Conn filed a First Amended Complaint. One of the factual allegations in the Amended Complaint against the Union is that, since her

4

termination from Pirson, the Union failed to substantively investigate or challenge the reason for her dismissal but that they did so for its male union members. On November 2, 2007, Attorney Berkowitz entered his appearance on behalf of the Union.

On June 16, 2008, Ms. Conn gave a deposition in this matter in which she was asked whether Attorney Berkowitz ever represented her in connection with this lawsuit. She responded that Attorney Berkowitz was "supposed to do some investigating and be the (Union) Hall's representative for me. But I had never met with him and I had only talked to him, I believe, two times prior to setting up this [February 26, 2006] meeting. And that was the time I talked to him was to set up this meeting, that's all that was ever talked to him about." Pl. Br., Exh. B, p. 162-63. Discussing the facsimile communication that she sent to Robin McKay at the EEOC on February 22, 2006, Ms. Conn testified that she told her that "even though I had heard from Stemmler that there were done doing what they were going to do for my case, I still wanted to hear from Paul Berkowitz myself, I wanted to hear it out of his own words that they were done with trying to help me." *Id*. at 161-62. When asked at her deposition whether she had paid Attorney Berkowitz when they met at the Country Inn, she responded, "Well, if you are retained through the Union Hall and the Union Hall had you go there to meet me, indirectly, I guess yes, I am paying you." *Id*. at 139. In her deposition, when asked why she did not bring this suit against Pirson, she responded, "Well, from the paperwork that I had read, which Mr. Berkowitz supplied, it appeared to me that Pirson had absolutely nothing to do with me being fired. And once again, I am not a lawyer, I am just an ironworker and I was trying to sort through this the best that I could do. Okay. And the fact of the matter is the blame lays with Keith Kolb." Pl. Br., Exh. B., p. 81.

On September 26, 2008, Ms. Conn filed the instant Motion to Disqualify Counsel. The Union filed its Response in Opposition to Motion to Disqualify Counsel on November 11, 2008, and Ms. Conn filed a Reply on November 14, 2008. With leave of Court, the Union filed a Sur-Response on November 26, 2008.

**ANALYSIS**

Ms. Conn now moves to disqualify Attorney Berkowitz from acting as counsel to the Union in this case, arguing that he is a necessary witness to the instant cause of action and that he gained unfair access to confidential information in violation of Indiana Rule of Professional Conduct 1.18(c). In response, the Union argues that the motion is untimely, factually lacking in candor, and substantively without merit because any relevant, material testimony by Attorney Berkowitz is available through Mr. Stemmler and others and because he did not obtain any confidential information. Ms. Conn's reply brief solely addresses the issue of timeliness.

The Seventh Circuit has cautioned that disqualification is a prophylactic device employed to protect the attorney-client relationship and is a "drastic measure which courts should hesitate to impose except when absolutely necessary." *Cromley v. Bd. of Ed. of Lockport Twp. High Sch. Dist. 205*, 17 F.3d 1059, 1066 (7th Cir. 1994) (quoting *Freeman v. Chi. Musical Instrument Co.*, 689 F.2d 715, 721 (7th Cir. 1982)). Motions to disqualify "should be viewed with extreme caution for they can be misused as techniques of harassment." *Freeman*, 689 F.2d at 722. However, the Seventh Circuit has instructed courts to resolve doubts in favor of disqualification. *See Exterior Sys., Inc. v. Noble Composites, Inc.*, 175 F. Supp. 2d 1112, 1115 (N.D. Ind. 2001) (citing *United States v. Goot*, 894 F.2d 231, 235 (7th Cir. 1990)). A district court possesses "broad discretion" in determining whether disqualification is required in a particular case. *Cardenas v. Benter Farms*, No.

IP 98-1067-C T/G, 2001 WL 292576, at *1 (S.D. Ind. Feb. 7, 2001) (quoting *Whiting Corp. v. White Mach. Corp.*, 567 F.2d 713, 715 (7th Cir. 1977) (citation omitted)). The party seeking disqualification bears the burden of showing facts requiring disqualification. *Id.*

The Local Rules of this Court provide that the Rules of Professional Conduct as adopted by the Indiana Supreme Court, along with the Standards for Professional Conduct adopted by the Seventh Circuit, provide the standard of conduct for those practicing in this court. *See* N.D. Ind. Local Rule 83.5(f).

### A. Indiana Rule of Professional Conduct 1.18 - Confidential Information

In her motion, Ms. Conn argues that Attorney Berkowitz must be disqualified under Indiana Rule of Professional Conduct 1.18 because she contends that he gained confidential information from her during the meeting at the Country Lounge Inn and that he is now representing interests materially adverse to hers as attorney for the Union in this substantially related matter.

Rule 1.18 provides:

(a) A person who discusses with a lawyer the possibility of forming a client-lawyer relationship with respect to a matter is a prospective client.
(b) Even when no client-lawyer relationship ensues, a lawyer who has had discussions with a prospective client shall not use or reveal information learned in the consultation, except as Rule 1.9 would permit with respect to information of a former client.
(c) A lawyer subject to paragraph (b) *shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received information from the prospective client that could be significantly harmful to that person in the matter*, . . . .

Ind. R. Prof. Cond. 1.18 (emphases added). Comment 2 to the Rule provides, "Not all persons who communicate information to a lawyer are entitled to protection under this Rule. A person who communicates information unilaterally to a lawyer, without any reasonable expectation that the lawyer is willing to discuss the possibility of forming a client-lawyer relationship, is not a

7

'prospective client' within the meaning of paragraph (a)." Ind. R. Prof. Cond. 1.18 comment 2. The commentary to Rule 1.18 further explains:

> Even in the absence of an agreement, under paragraph (c), the lawyer is not prohibited from representing a client with interests adverse to those of the prospective client in the same or a substantially related matter unless the lawyer has received from the prospective client information that could be significantly harmful if used in the matter.

Ind. R. Prof. Cond. 1.18 comment 6.

First, the Rule defines a prospective client as "[a] person who discusses with a lawyer the possibility of forming a client-lawyer relationship with respect to a matter." *Id*. at 1.18(a). In her motion, Ms. Conn does not directly assert that she was or ever believed that she was a prospective client of Attorney Berkowitz, and the evidence before the Court belies any such assertion. She does state in her motion that Attorney Berkowitz met with her at the Country Lounge Inn to offer his legal services to assist her in filing an EEOC charge against Pirson or U.S. Steel. However, Ms. Conn's actions prior to, during, and after the meeting at the Country Lounge Inn indicate that she kept Attorney Berkowitz at arm's length and did not believe that he represented her interests.

Days prior to the dinner meeting, Ms. Conn sent a facsimile communication to the EEOC stating, "I am going to schedule a meeting with Paul Berkowitz (Union Hall Lawyer) to hear his input, so I might have some more information to fax you." Def. Br., Exh. 3 (parenthetical in original). During the meeting, Ms. Conn secretly recorded the conversation with a device located in her purse (she later had the recording transcribed), asking Attorney Berkowitz to speak up at times due to her troubled hearing. Although she states in her motion that she "believed she was paying for Berkowitz's services at the Country Lounge," Pl. Br., p. 3, the deposition answer she cites in support of this belief was given when asked whether she had paid Attorney Berkowitz when they

8

met at the Country Inn and connotes an entirely different meaning: "Well, if you are retained through the Union Hall and the Union Hall had you go there to meet me, indirectly, I guess yes, I am paying you." Pl. Br., Exh B, p. 139.

Months after the dinner meeting, on May 9, 2007, Ms. Conn sent a letter to the EEOC stating that a few lawyers she had spoken to about this matter suggested that she had a suit against the Union hall for not representing her properly. In the same letter, Ms. Conn describes her relationship with Attorney Berkowitz: "[Paul Berkowitz and I] only had 1 meeting ever. And that was long after the labor board meeting, and long after I had started this process with the EEOC." *Id*. In her deposition, when asked whether Attorney Berkowitz ever represented her in this lawsuit, her response was essentially that her only contact with him was the meeting at the Country Lounge Inn and she referred to him as the Union's representative for her. Ms. Conn did not view herself as a prospective client of Attorney Berkowitz but rather understood him to be the Union Attorney, and, read in its entirety, her conversation with him at the County Lounge Inn was in his capacity as Union Attorney.

Second, and more importantly, Ms. Conn has not identified any information that Attorney Berkowitz learned during the conversation at the Country Lounge Inn that he did not already know through his ongoing representation as the Union's attorney. *See* Ind. R. Prof. Cond. 1.18(b). She also has not identified in either her opening motion or her Reply Brief any information he received from her during that meeting that "could be significantly harmful to her in this matter." *Id*. at 1.18(c). She only states that during the meeting, she informed him of all she knew about her termination, encompassing all of her allegations in the Amended Complaint.

Through the Union's Response Brief, Attorney Berkowitz represents that, as the Union's attorney, he was aware of all of the facts gathered through the Union's investigation of Ms. Conn's job separation prior to the February 2006 meeting at the Country Lounge Inn. He further represents that the only facts that are now revealed in the Amended Complaint that he did not know through his representation of the Union and that were also not mentioned by Ms. Conn at the February 2006 meeting, were Ms. Conn's initial membership date in Local 395, her job performance, the alleged discrimination against her since 1982, the number of females in the Union, the alleged complaints of discrimination that Ms. Conn allegedly brought to the Union's attention, the Union's alleged failure to refer her to jobs following her separation from Pirson, and the alleged actions taken for allegedly similarly situated males that were not taken for her. It appears that the facts identified during the dinner meeting were facts that appeared in the various documents sent either by Attorney Berkowitz on behalf of the Union to Pirson and/or to the NLRB, all of which were copied to Plaintiff. Moreover, in support of her motion, she has submitted a transcript of the entire conversation at the Country Lounge Inn, and all information discussed at that meeting is now part of the public record. Therefore, Attorney Berkowitz is not disqualified under Rule 1.18.[2]

---

[2] In addition, courts have found that to decide that an attorney who represents a Union cannot further represent the Union when the Union is sued by a Union member for how the Union grieved her cause "would require every labor union to retain several law firms to handle specific areas of potential litigation or proceedings in which the union may become embroiled." *Griesemer v. Retail Store Employees Union, Local 1393*, 482 F. Supp. 312, 315 (E.D. Pa. 1980); *Adamo v. Hotel, Motel, Bartenders, Cooks and Rest. Workers' Union*, 655 F. Supp. 1129, 1130 (E.D. Mich. 1987) ("As pointed out in *Greisemer*, if a law firm cannot represent the union in a case such as this, every labor union would have to retain a number of law firms to handle various aspects of its work."). "Representing the local union in processing a grievance does not automatically disqualify counsel from representing the union when the dissatisfied grievant sues." *Griesemer*, 482 F. Supp. at 315.

## B. Indiana Rule of Professional Conduct 3.7 - Necessary Witness

As a second ground for disqualification, Ms. Conn asserts that Attorney Berkowitz is a material witness under Indiana Rule of Professional Conduct 3.7, which addresses the risk of an attorney serving as a witness:

> (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
> (1) the testimony relates to an uncontested issue;
> (2) the testimony relates to the nature and value of legal services rendered in the case; or
> (3) disqualification of the lawyer would work substantial hardship on the client.
> (b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9.

Ind. R. Prof. Cond. 3.7. The primary consideration of Rule 3.7 is whether the lawyer is a "necessary witness." *Knowledge A-Z, Inc. v. Sentry Ins.*, 857 N.E.2d 411, 418 (Ind. Ct. App. 2007). When the attorney's testimony is "relevant, material, and unobtainable elsewhere," the rule's necessity requirement is met. *Borom v. Town of Merrillville*, No. 2:07 CV 98, 2007 WL 1797639, at *2 (N.D. Ind. June 19, 2007) (citing *Stewart v. Bank of Am. N.A.*, 203 F.R.D. 585, 586 (M.D. Ga. 2001); *Carta ex. rel. Estate of Carta v. Lumbermens Mut. Cas. Co.*, 419 F. Supp. 2d 23, 29 (D. Mass. 2006) (quoting *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 239 F. Supp. 2d 1170, 1173 (D. Colo. 2003)); *Macheca Transp. Co. v. Philadelphia Indem. Ins. Co.*, 463 F.3d 827, 833 (8th Cir. 2006) (quoting *State ex. rel. Wallace v. Munton*, 989 S.W.2d 641, 646 (Mo. App. 1999) ("[The rule] has been interpreted to mean an attorney is a 'necessary witness' only if 'there are things to which he will be the only one available to testify.'")). The Court must weigh the client's interest in continued representation against the risk of prejudice to the opposing party. *Hutchinson v. Spanierman*, 190 F.3d 815, 828 (7th Cir. 1999).

Ms. Conn argues in her motion that an essential element to her prima facie case against the Union is proving the Union refused to grieve her termination from the Blast Furnace and that Attorney Berkowitz is a necessary witness who will testify to: (1) how the Union handled Plaintiff's grievances; (2) why or why not Pirson is the responsible party for Plaintiff's discharge; and (3) the actions taken by the Union on Ms. Conn's behalf in light of the Union's position that Ms. Conn was fired on the basis of sex discrimination. However, she does not respond to the factual arguments in the Union's response brief that Attorney Berkowitz is not a necessary witness under the standard in *Borom*.

In order for Attorney Berkowitz to be a necessary witness in this case, he must be the *only* person able to testify about such information. From the correspondence provided through the briefing of this motion, it appears that James Stemmler (the Union Business Manager) and possibly other Union members are not only acquainted with the situation but have been involved in the Union's decision making throughout the investigation of Ms. Conn's discharge. It was Mr. Stemmler, and not Attorney Berkowitz, who met with U.S. Steel immediately after Ms. Conn's discharge, and it was Mr. Stemmler who decided to file the NLRB charges. In addition, some areas of questioning that Ms. Conn has suggested she would ask Attorney Berkowitz at trial may cross the line into topics covered by the attorney-client privilege. Therefore, the Court finds that, because the information Ms. Conn would elicit through Attorney Berkowitz's testimony can be obtained from other individuals such as Union representatives like Mr. Stemmler, Attorney Berkowitz is not a necessary witness and is not disqualified under Rule 3.7.

### C. Timeliness

Finally, the Union argues that the motion should be denied as untimely, the only argument to which Ms. Conn provided a response in her Reply Brief. However, because the Court denies the motion on the merits, the Court declines to address this issue.

### CONCLUSION

Based on the foregoing, the Court hereby **DENIES** Plaintiff's Motion to Disqualify Counsel [DE 38]. Further, the Court **DENIES** Defendant's request in its Response Brief for costs and fees associated with responding to the instant Motion.

SO ORDERED this 2nd day of February, 2009.

                                              s/ Paul R. Cherry
                                              MAGISTRATE JUDGE PAUL R. CHERRY
                                              UNITED STATES DISTRICT COURT

cc:     All counsel of record