**United States District Court
Northern District of Indiana
Hammond Division**

| | | |
|---|---|---|
| COLLEEN CONN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:07-CV-213 JVB |
| | ) | |
| UNITED STATES STEEL CORPORATION | ) | |
| and IRON WORKERS LOCAL 395, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

This matter is before the Court on Defendant United States Steel Corporation's motion for summary judgment. Oral argument was heard on March 4, 2010.

**A. Background**

Plaintiff Colleen Conn, a member of Ironworkers Local 395, has sued United States Steel Corporation (USS) and Iron Workers Local 395 alleging sex discrimination in employment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. In her amended complaint she alleges that, while she was working as an ironworker for USS on the rebuilding of the No.14 Blast Furnace, Defendants USS and the Union wrongfully terminated her from the project on account of her sex and that the Union failed to adequately investigate or challenge her dismissal on account of her sex. Defendant USS argues that it did not have an employer–employee relationship with Conn and cannot be considered her de facto employer, and that she cannot show gender discrimination.

## B. Legal Standard

A motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party supports its motion for summary judgment with affidavits or other materials, it thereby shifts to the non-moving party the burden of showing that an issue of material fact exists. *Kaszuk v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 558 (7th Cir. 1986).

Rule 56(e) specifies that once a properly supported motion for summary judgment is made, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts to establish that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234

(7th Cir. 1995). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby, 477 U.S. 242, 249–50* (1986).

**C. Facts**

The relevant facts assumed to be true for the purpose of ruling on USS's Motion for Summary Judgement are:

Plaintiff has been a member of the Ironworkers Union since 1982, one of only a handful of female members. She has worked on jobs at USS sites many times during the course of her career as an ironworker. In September 2005 she was working on the construction of the US Steel Gary Works No. 14 blast furnace when Mike Summers, the business agent for Local 395, appointed her to be an assistant night union steward on the job.

A company called Pirson hired Plaintiff for the project and issued her paycheck. Ironworkers Local 395 does not have a collective bargaining agreement with USS. There is a collective bargaining agreement between Local 395 and Pirson which covers ironworkers employed by Pirson. Plaintiff received an employee handbook from Pirson. Plaintiff explained the relationship between herself, Pirson and USS: "I would say I was hired by Pirson Contractors for U.S. Steel." Pl. Dep., at 29.

During the construction of the No. 14 blast furnace, USS personnel were always on the site. Plaintiff received USS's safety book and completed its safety training program. All contractors and their employees were subject to USS safety rules. Keith Kolb, USS's manager of labor relations, directed the safety activities of Pirson personnel who directed Plaintiff's work.

3

He held two or three meetings with all the workers on the project during the course of construction. USS had the authority to remove ironworkers from the project. Plaintiff used a USS contractor badge to gain entry to the work site.

On the night of October 23, 2005, a number of ironworkers walked off the job at the No. l4 blast furnace project. Sometime after the incident, Summers called Plaintiff at home to tell her she had been accused of using the radio on the site to try to get people to leave the job, which she denied. She was told there would be a meeting at Keith Kolb's office the next morning to decide whether she would be fired and barred from the site. Before the meeting Plaintiff gathered more than 100 signatures to a statement that she did not use the radio on October 23 to urge people to leave their jobs.

In addition to the Plaintiff and Kolb, (whom Plaintiff had never met before the meeting) James Stemmler (the business manager for Local 395), Summers, and Mike Kosinski (the other night union steward) attended the meeting. Kosinski told Kolb that Plaintiff never made the alleged radio transmission; rather, it was Mike Vanetta, Pirson's night general superintendent, who had said over job radio that office personnel should be ready to issue tool passes and checks because some people were walking off the job. Kolb refused to identify Plaintiff's accuser at the meeting. However, when he was deposed, Kolb revealed that Richard Soohey, a Pirson employee at the time, had told him that Vanetta had told Soohey that Vanetta had overheard Plaintiff on the job radio attempting to convince other people to support the ironworkers who were walking off the job and asking if anyone else wanted to leave. Kolb had known Soohey professionally for more than twenty years as a construction superintendent for a number of companies that had worked on major projects at the Gary Works. He had dealt with Soohey, a

4

former ironworker, on issues of conduct in the past and had always found him to be very professional. Kolb had once been introduced to Vanetta but had not had any other prior dealings with him.[1]

Kolb paid no attention to the signatures Plaintiff had obtained, telling her that as far as he was concerned she had intimidated the men into signing the petition. At the close of the meeting he told Plaintiff that he would make a decision by noon the next day as to whether he would fire and ban her. The day following the meeting he informed either Stemmler or Summers that he would restrict Plaintiff's access privileges to the plant: Plaintiff would not be allowed to return to the blast furnace project, but could work at other jobs in the plant where there was work for ironworkers. Kolb attempted to speak directly with Vanetta only after he had made his decision regarding Plaintiff, but was unable to contact him.

**D. Discussion**

Under § 703(a)(1) of the Civil Rights Act of 1964 (42 U.S.C. § 2000e-2(a)(1)), it is unlawful for any employer to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." Both Plaintiff and USS proceed under the premise that Plaintiff must be an employee of USS in order to have a claim for sex discrimination against USS. Both sides agree that whether or not Plaintiff is an employee of USS is a question of law

---

[1] Plaintiff includes in her statement of facts remarks of Vanetta to the effect that he emphatically did not want a female union steward on his job. USS objects that these statements are inadmissible hearsay. Irrespective of whether the remarks are hearsay, they are irrelevant. Plaintiff has failed to back up her bald assertion that any discriminatory animus on the part of Vanetta—a management employee of Pirson, not USS—can be attributed to USS, with any facts, argument, or legal authority on which to base the assertion.

5

for the Court to decide. Both point to *Knight v. United Farm Bureau Mut. Ins. Co.*, 950 F.2d 377, 378–79 (7th Cir. 1991), for the five factors a court must consider in order to determine whether Plaintiff is an employee of USS or an independent contractor. Those factors are: 1) the putative employer's control and supervision of a worker; 2) the kind of occupation and nature of skill required, including whether skills are obtained in the workplace; 3) responsibility for the costs of operation, such as equipment, supplies, fees, licenses, workplace, and maintenance of operations; 4) the method and form of payment of benefits, and; 5) length of job commitment and expectations. *Id.* at 378–79.

The Court concludes that Plaintiff was not a direct employee of USS. Rather, she was the employee of an independent contractor, Pirson, who contracted with USS for the construction of a blast furnace. While the Plaintiff points to some evidence of USS's control over all workers on the site, such as holding safety meetings, requiring safety training, and reserving the right to exclude workers from its premises, these functions are as consistent with its role as the owner of the premises as they are with an employer-employee relationship between Plaintiff and USS. Plaintiff did work at USS for other contractors throughout her career, but USS did not train her to be an ironworker. She did not have expectations of permanent employment at USS; her job would last only until Pirson completed the work USS contracted for. Moreover, Plaintiff's admissions that Pirson hired her, that she was never directly supervised by a USS employee (although USS personnel did tell her not to come in on a few occasions when USS shut down the job), and that her paycheck came from Pirson argue against a direct employer-employee relationship with USS.

The most significant control USS exerted over Plaintiff was its decision not to allow her

6

to work on the No. 14 blast furnace project in the aftermath of the walk-off. However, even this action is consistent with it position as owner of the premises. In its contract with USS, Pirson agreed to be bound by USS's Contractors Safety Specification No. S-001. In the S-001, USS reserved the right to remove contractors' employees from the plant for any reason it deemed appropriate.

The Court further concludes that Plaintiff was not a de facto employee of USS. A plaintiff may be found to be a de facto employee when an employer does not directly employ her, but "so far controlled the plaintiff's employment relationship that it [is] appropriate to regard the defendant as the de facto or indirect employer." *EEOC v. State of Ill.*, 69 F.3d 167, 169 (7th Cir. 1995). However, the facts in the instant case demonstrate no such extraordinary control. In *EEOC v. State of Illinois*, the case Plaintiff named during oral argument as the strongest support for her claim, the Court of Appeals for the Seventh Circuit found no de facto, or indirect employment relationship where the putative employer exerted far greater control than USS exerted over Plaintiff. There, even though the state of Illinois set teachers' minimum salaries, the number of days they must work, the number of their sick days, the terms of their tenure, the rights of recalled teachers, and much else, the court determined that the state was not their de facto employer. *Id.* at 171.

The court in *EEOC v. State of Illinois* did say that the key powers in an employment relationship are the power to hire and fire. *Id.* Although Plaintiff admits that Pirson, not USS, hired her, she maintains that USS fired her. Yet the facts show that USS banned her from the blast furnace project, not that it terminated her employment with Pirson.

Plaintiff must prove the existence of an employment relationship between herself and

7

USS in order to maintain a Title VII action against USS. *See Knight v. United Farm Bureau Mut. Ins. Co.*, 950 F.2d 377, 380 (7th Cir. 1991). Because she has failed to do so, the Court does not reach the issue of whether Plaintiff has made out a prima facie case of discrimination against USS.

**E.  Conclusion**

For the foregoing reasons, USS's motion for summary judgment (DE 64) is GRANTED.

SO ORDERED on March 30, 2010.

s/ Joseph S. Van Bokkelen  
Joseph S. Van Bokkelen  
United States District Judge