**United States District Court**
**Northern District of Indiana**
**Hammond Division**

| | |
|---|---|
| COLLEEN CONN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 2:07-CV-213 JVB |
| | ) |
| UNITED STATES STEEL CORPORATION | ) |
| and IRON WORKERS LOCAL 395, | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER**

This matter is before the Court on Defendant Iron Workers Local 395's motion for summary judgment. Oral argument was heard on March 4, 2010.

**A. Background**

Plaintiff Colleen Conn, a member of Ironworkers Local 395, has sued United States Steel Corporation (USS) and Iron Workers Local 395 alleging sex discrimination in employment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. In her amended complaint she alleges that while she was working as an ironworker for USS on the rebuilding of the No.14 Blast Furnace, Defendants USS and the Union wrongfully terminated her from the project on account of her sex and that the Union failed to adequately investigate or challenge her dismissal on account of her sex.[1] The Union argues that Plaintiff has failed to

---

[1] Plaintiff has abandoned her claim that the Union was her employer by failing to address the issue in her response to the Union's brief in support of its motion.

establish a prima facie case against it.

**B. Legal Standard**

A motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party supports its motion for summary judgment with affidavits or other materials, it thereby shifts to the non-moving party the burden of showing that an issue of material fact exists. *Kaszuk v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 558 (7th Cir. 1986).

Rule 56(e) specifies that once a properly supported motion for summary judgment is made, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts to establish that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and

resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby, 477 U.S. 242, 249–50* (1986).

**C. Facts**

The relevant facts assumed to be true for the purpose of ruling on the Union's Motion for Summary Judgement are:

Plaintiff has been a member of the Ironworkers Union since 1982, one of only a handful of female members.

Plaintiff has worked on jobs at USS sites many times during the course of her career as an ironworker. In September 2005 she was working on the construction of the US Steel Gary Works No. 14 blast furnace. A company called Pirson issued her paycheck. Mike Summers, the business agent for the Union, appointed her to be an assistant night union steward on the job.

The Union does not have a collective bargaining agreement with USS. There is a collective bargaining agreement between the Union and Pirson which covers ironworkers employed by Pirson.

Shortly after Plaintiff was appointed union steward, Tommy Williamson, daytime union steward on the project, told Plaintiff that, as a woman, she had no business being an ironworker and that she should be at home, pregnant and cooking meals. Mike Vanetta, the night general superintendent of Pirson, told Plaintiff, "I don't appreciate you being a little bitch and going to Mike Summers and reporting everything that goes on." Pl.'s Ex. A at 78, 20–23. He also said "I

3

don't want no fucking cunt being a steward on my job." He told Summers "There is no woman going to be a steward on my job" and "I'm not going to have no bitch on my job." Pl.'s Ex. D at 24, 6–12; Pl.'s Ex. E at 33, 4–6. Summers responded by telling him that he, Vanetta, could not tell Summers whom he could appoint as a union steward and that Plaintiff was a very well-qualified iron worker, who would be the steward.

On the night of October 23, 2005, a number of ironworkers walked off the job at the No. l4 blast furnace project. Plaintiff learned of the walk-off when Mike Kosinski (the other night union steward) called her on her cell phone to tell her that people were leaving the job site. A few days after the incident, Summers called Plaintiff at home to tell her she had been accused of using the radio on the site to try to get people to leave the job, which she denied. She was told there would be a meeting with Keith Kolb, USS's manager of labor relations, the next morning to decide whether she would be fired and barred from the site. Before the meeting Plaintiff gathered more than 100 signatures to a statement that she did not use the radio on October 23 to urge people to leave their jobs.

In addition to the Plaintiff and Kolb, (whom Plaintiff had never met before the meeting) James Stemmler (the business manager for the Union), Summers, and Kosinski attended the meeting. Kosinski told Kolb that Plaintiff never made the alleged radio transmission; rather, it was Mike Vanetta, Pirson's night general superintendent, who had said over job radio that office personnel should be ready to issue tool passes and checks because some people were walking off the job.

Kolb refused to identify Plaintiff's accuser at the meeting. However, when he was deposed (on June 25, 2008), Kolb testified that Richard Soohey, a Pirson employee at the time,

4

had told him that Vanetta had told Soohey that Vanetta had overheard Plaintiff on the job radio attempting to convince other people to support the ironworkers who were walking off the job and asking if anyone else wanted to leave. Kolb had known Soohey professionally for more than twenty years as a construction superintendent for a number of companies that had worked on major projects at the Gary Works. He had dealt with Soohey, a former ironworker, on issues of conduct in the past and had always found him to be very professional. Kolb had once been introduced to Vanetta but had not had any other prior dealings with him.

Kolb paid no attention to the signatures Plaintiff had obtained, telling her that as far as he was concerned she had intimidated the men into signing the petition. At the close of the meeting he told Plaintiff that he would make a decision by noon the next day as to whether he would fire and ban her. The day following the meeting he informed either Stemmler or Summers that he would restrict Plaintiff's access privileges to the plant: Plaintiff would not be allowed to return to the blast furnace project, but could work at other jobs in the plant where there was work for ironworkers. Kolb attempted to speak directly with Vanetta only after he had made his decision regarding Plaintiff, but was unable to contact him.

After Plaintiff was barred from the job, Summers replaced her as union steward with Steve White. By letter dated November 1, 2005, the Union requested additional information from Pirson on why Plaintiff was laid off and filed an unfair labor practice charge with the National Labor Relations Board when it had received no response by November 16, 2005. After the charge was filed, Pirson responded that Plaintiff's separation was initiated by USS, not Pirson. In contrast to the reason Kolb had given for barring Plaintiff, in a fax to the NLRB on January 9, 2006, Jan Soonius of Pirson informed the NLRB that he had learned that USS had

5

barred Plaintiff from the plant on account of arguments she had with USS officials at the gate and that he respected USS's decision.

On February 26, 2006, Plaintiff had a meeting with Paul Berkowitz, the Union's attorney. When she asked him why he did not request additional information from Pirson after receiving a different reason for USS's action against her, he responded that Pirson had left the site and was in bankruptcy. He told her that an action could be brought against Pirson, "which is out of business, or we could go after USX [*sic*] which is what we want to do." (Pl.'s Ex. H, at. 37, 15–18. During the meeting Plaintiff told Berkowitz that she had no doubt that Mike Vanetta was behind her problems with USS. However, in her deposition (taken on June 16, 2008, before Kolb testified at his deposition that it was Vanetta who had accused Plaintiff of inciting workers to walk off the job) she stated that she did not know who had lied to Kolb about her. The Union offered to pay its attorney to represent Conn if she pursued her claim to the EEOC. She did file an EEOC claim against USS but did not sue Pirson because, from the information she received from Berkowitz, it appeared to her that Pirson had nothing to do with her firing.

**D. Discussion**

To establish a Title VII sex discrimination claim against the Union, Plaintiff must show:

1. that the employer violated the CBA between the Union and the employer with respect to her;

2. that the Union breached its duty of fair representation by allowing the breach to go unrepaired; and

3. that there is some evidence that the Union's actions were motivated by a

discriminatory animus toward her because of her sex.

*See Greenslade v. Chicago Sun-times, Inc.*, 112 F.3d 853, 866 (7th Cir. 2003).

Assuming, for the sake of argument, that Plaintiff has designated some evidence from which a jury could find that Pirson breached the CBA, she has wholly failed to come forward with any evidence that the Union's failure to file a grievance against Pirson concerning her separation was motivated by any discriminatory animus.[2] Plaintiff does not explain who within the Union had the authority to decide whether to file a grievance. The only evidence of animus against the Plaintiff because of her sex by anyone connected with the Union is Williamson's statement to Plaintiff that women should not be ironworkers, but nothing in the record suggests that he, a union steward, had any influence over the Union's decision not to file a grievance against Pirson.

Plaintiff offers a convoluted rational in support of her naked assertion that the Union's actions demonstrate its discriminatory animus: She argues that the Union persuaded her not to sue Pirson because if it were proven that Pirson had discriminated against Plaintiff, that would be a violation of the CBA, which would prove that the Union had breached its duty of fair representation by allowing the breach to go unrepaired. According to Plaintiff, this explains why the Union did not proceed against Pirson after uncovering two different stories about why USS barred her from the job. She further asserts that the Union had reason to know Vanetta was behind the false allegations against her but failed to proceed against Pirson after discovering evidence that supported the contention that Vanetta had set her up. While the argument is not

---

[2]The Union did file a grievance against Pirson but it appears that the purpose was to gather additional information rather than to charge Pirson with discriminating against Plaintiff because of her sex in violation of the CBA.

entirely clear, Plaintiff appears to be claiming that the fact that there were two different stories about why Plaintiff was barred points to Vanetta's guilt so that the Union had the evidence it needed to pursue Pirson.

Even if the Union did discourage Plaintiff from suing Pirson for the reasons she claims—to cover up a breach of the duty of fair representation—she still has no evidence that sex discrimination motivated the Union. That the Union failed to redress Pirson's alleged sex discrimination against Plaintiff, is not, by itself, sufficient to allow a reasonable jury to conclude that the Union shared Pirson's discriminatory animus. Moreover, the Court is at a loss to understand how an explanation of USS's reasons for barring Plaintiff from Kolb (a USS employee) that differs from an explanation by Soonius (a Pirson employee) points to Vanetta's culpability. Additionally, it can be inferred from Plaintiff's deposition testimony that she did not know who lied to USS about her, that her statement to Berkowitz that she knew Vanetta was behind, it was not based on any evidence but was simply her own surmise. There was no evidence of Vanetta's role until 2008, when Kolb was deposed.

The record supports the conclusion that the Union did not pursue Pirson not because of any discriminatory animus on the part of the Union toward Plaintiff but rather because it did not believe there was any evidence of discrimination by Pirson.

**E. Conclusion**

For the foregoing reasons the Court GRANTS Defendant Iron Workers Local 395's motion for summary judgment (DE 67).

SO ORDERED on March 30, 2010.

s/ Joseph S. Van Bokkelen  
Joseph S. Van Bokkelen  
United States District Judge